IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:95-CR-142-FL-1
NO. 5:16-CV-628-FL

| | |
|---|---|
| STEPHAN M. BULLIS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on petitioner's motions to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (DE 98) and for compassionate release (DE 136). Also before the court is respondent's motion to dismiss (DE 128) the § 2255 habeas petition. The issues raised have been briefed fully and are ripe for ruling.

## BACKGROUND

In July 1995, petitioner mailed two pipe bombs, the first to his former wife at her place of employment, Business Telecom, Inc. ("BTI"), and the second to another employee of BTI. (PSR (DE 100) ¶ 15).[1] The first bomb was delivered to plaintiff's former wife. (Id. ¶ 16). The bomb exploded as the victim opened the package, severing most of her left hand and causing other injuries. (Id.). The explosion also caused extensive property damage to BTI's office, and emotionally traumatized at least one of the victim's coworkers. (Id. ¶¶ 16–17). Postal employees discovered the second bomb in a parcel bin and law enforcement successfully defused

---

[1] "PSR" refers to the presentence investigation report at docket entry 100.

it.  (Id. ¶ 23).   Petitioner attempted to kill his wife because he was involved in an extramarital affair and to collect life insurance proceeds.   (Id. ¶ 12).

On August 15, 1995, a federal grand jury returned indictment charging petitioner with the following: 1) mailing a non-mailable item (a pipe bomb) with intent to kill or injure another, in violation of 18 U.S.C. § 1716 (count one); 2) maliciously damaging property by means of explosive materials, with personal injury resulting (arson), in violation of 18 U.S.C. § 844(i); 3) using a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); 4) mailing a non-mailable item (a pipe bomb) with intent to kill or injure another, in violation of 18 U.S.C. § 1716 (count four); 5) attempting to maliciously damage property by means of explosive materials (arson), in violation of 18 U.S.C. § 844(i) (count five); and 6) using a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (count six).

Petitioner pleaded not guilty to the foregoing offenses and proceeded to jury trial.   On February 14, 1996, the jury returned guilty verdicts as to all counts.   On April 22, 1996, petitioner was sentenced as follows: 1) 235 months' imprisonment on counts one, two, four, and five, all to be served concurrently; 2) 360 months' imprisonment on count three, to be served consecutively to the terms in counts one, two, four, and five; and 3) life imprisonment on count six, to be served consecutively to all other counts.   The aggregate sentence therefore was life imprisonment and a consecutive additional term of 595 months' imprisonment.   Petitioner appealed, and the United States Court of Appeals for the Fourth Circuit affirmed the judgment of conviction.

On June 24, 2016, petitioner filed the instant motion to vacate, set aside, or correct sentence, asserting that his § 924(c) convictions in counts three and six should be vacated in light

of Johnson v. United States, 576 U.S. 591 (2015).[2] The court stayed the § 2255 proceedings pending resolution of various cases in the Supreme Court and the Fourth Circuit.[3] On July 24, 2019, the court lifted the stay and directed supplemental briefing. On December 27, 2019, respondent filed the instant motion to dismiss, which was briefed fully.

On December 8, 2020, while the motion to vacate remained pending, petitioner filed the instant motion for compassionate release, supported by Federal Bureau of Prisons' medical and administrative records, educational and vocational training certificates, character references, and related records. Petitioner argues that the court should grant compassionate release based on his risk of contracting COVID-19 while incarcerated, because his § 924(c) convictions are invalid under United States v. Davis, 139 S. Ct. 2319 (2019), and in light of the disparity between petitioner's life sentence on the second § 924(c) conviction and the likely sentence under current law. The motion for compassionate release also was briefed fully.

On April 15, 2021, the court entered order holding the motion to vacate in abeyance pending the Fourth Circuit's resolution of United States v. Dickerson, No. 20-6578 (4th Cir., filed Apr. 28, 2020). On February 7, 2022, the court also held the motion for compassionate release in abeyance pending resolution of the § 2255 motion. On May 25, 2022, following issuance of the Dickerson mandate, the court lifted the stay and directed the parties to file supplemental briefing addressing petitioner's motion to vacate. The parties timely filed their supplemental briefing.

---

[2]  The court denied petitioner's first motion to vacate on March 17, 2005. Petitioner therefore was required to obtain prefiling authorization from the Fourth Circuit to file successive § 2255 motion. 28 U.S.C. § 2255(h). On July 13, 2016, the Fourth Circuit entered order authorizing petitioner to file the instant motion in this court.

[3]  In the meantime, this matter was reassigned to the undersigned upon retirement of the district judge that presided over petitioner's original trial and sentencing.

3

Petitioner maintains that his § 924(c) convictions should be vacated because the underlying predicate convictions no longer qualify as crimes of violence, in light of Davis and related case law. Respondent opposes § 2255 relief, arguing that Davis does not require vacatur of petitioner's § 924(c) convictions.

**DISCUSSION**

A.  Section 2255 Motion

  1.  Standard of Review

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." Id. § 2255(b).

  2.  Analysis

Pursuant to 18 U.S.C. § 924(c), a person convicted of using a destructive device "during and in relation to any crime of violence or drug trafficking crime" is subject to a mandatory minimum punishment of 30 years' imprisonment for the first conviction, and a mandatory term of life imprisonment for a second conviction. 18 U.S.C. § 924(c)(1) (1996). These sentences must run consecutive to any sentence imposed for the predicate crime of violence or drug trafficking crime, and the life sentence for the second § 924(c) conviction must run consecutive to sentence

4

for the first § 924(c) conviction.  Id.[4]  Section 924(c)(3) defines crime of violence as an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another [the "force clause"], or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [the "residual clause"].

Id. § 924(c)(3)(A)-(B).[5]

The Supreme Court and the Fourth Circuit have held that § 924(c)(3)(B) is unconstitutionally vague, thereby rendering invalid § 924(c) convictions based on the residual clause definition of crime of violence.  Davis, 139 S. Ct. at 2336; United States v. Simms, 914 F.3d 229, 237 (4th Cir. 2019).  The Davis and Simms decisions, however, do not call into question the constitutionality of § 924(c)(3)(A).  Thus, if petitioner's predicate offense qualifies as a crime of violence under subsection (c)(3)(A) (the force clause), his conviction remains valid.  See United States v. Mathis, 932 F.3d 242, 263–64 (4th Cir. 2019).

Here, petitioner's underlying predicate crimes of violence are arson, attempted arson, and mailing a nonmailable matter.  (Indictment (DE 120-2)).  Respondent concedes that petitioner's arson convictions no longer qualify as predicate crimes of violence under the force clause.  (Resp't Suppl. Br. (DE 155) at 9 n.4); see also United States v. Abed, 3 F.4th 104, 109 (4th Cir.

---

[4]  Congress recently amended § 924(c) such that the second or successive conviction triggering the consecutive life sentence must be obtained after the first conviction has become final.  See 18 U.S.C. § 924(c)(1)(C).  At the time of petitioner's convictions, however, the second or successive conviction triggering the enhanced sentence could be obtained in the same criminal prosecution.  See 18 U.S.C. § 924(c)(1) (1996); United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020).

[5]  As noted above, petitioner was sentenced on April 22, 1996.  Although Congress has amended § 924(c) on multiple occasions since April 1996, the pertinent definitions of crime of violence have not changed.

2021); United States v. Wilder, 834 F. App'x 782, 784 (4th Cir. 2020). The parties dispute whether mailing a nonmailable matter is a valid predicate crime of violence under the force clause. And the Fourth Circuit has not addressed whether this conviction is a crime of violence under the force clause.

In order to determine whether a predicate conviction constitutes a crime of violence under the force clause, the court begins by determining "which of two modes of analysis the Supreme Court has approved applies": either the categorical approach or the modified categorical approach. See United States v. Allred, 942 F.3d 641, 647 (4th Cir. 2019) (addressing related question under the force clause in the Armed Career Criminal Act); see also United States v. Melaku, 41 F.4th 386, 390–95 (4th Cir. 2022) (applying same inquiry for § 924(c)'s force clause). If the statute of conviction is "indivisible, [because] it sets out a single set of elements to define a single crime" the court applies the categorical approach. Allred, 942 F.3d at 647.[6] The categorical approach requires that the court "focus only on the elements of the offense and the fact of conviction, not on the defendant's conduct." Id. With respect to § 924(c)'s force clause, the court asks whether "the offense itself necessarily must have as an element the use, attempted use, or threatened use of physical force against the person [or property] of another." Id. at 647–48; Melaku, 41 F.4th at 391; 18 U.S.C. § 924(c)(3)(A). Furthermore, the categorical inquiry's focus is "whether the most innocent conduct that the law criminalizes requires proof of the use, attempted use, or threatened use of force sufficient to satisfy the force clause." Allred, 942 F.3d at 648.

The modified categorical approach applies "where the prior conviction at issue is for

---

[6] In this order, all internal citations and quotations are omitted from citations, unless otherwise specified.

6

Case 5:95-cr-00142-FL   Document 156   Filed 09/16/22   Page 6 of 17

violation of a divisible statute." Descamps v. United States, 570 U.S. 254, 257 (2013); Allred, 942 F.3d at 648. A divisible statute "is one that includes multiple alternative elements that create different versions of the crime, at least one of which would qualify under the force clause and at least one of which would not." Allred, 942 F.3d at 648. If the statute is divisible, the court may consult a limited set of documents from the record, such as the indictment, jury instructions, or plea agreement, "for the sole purpose of determining what crime, with what elements, a defendant was convicted of." Mathis v. United States, 579 U.S. 500, 505–06 (2016); Allred, 942 F.3d at 648. Once the specific crime is identified, the court returns to the categorical approach to determine whether the offense qualifies as a crime of violence. Allred, 942 F.3d at 648.

At the time of petitioner's conviction, 18 U.S.C. § 1716 provided in relevant part:[7]

> Whoever knowingly deposits for mailing or delivery, or knowingly causes to be delivered by mail, according to the direction thereon or at any place to which it is directed to be delivered by the person to whom it is addressed, anything declared nonmailable by this section . . . with intent to kill or injure another, or injure the mails or other property, shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

18 U.S.C. § 1716 (1996) (emphasis added). Respondent argues that the emphasized phrase "with intent to kill or injure another, or injure the mails or other property," is divisible because it sets forth two separate crimes, and that the court therefore should review petitioner's indictment to determine which crime was charged. (See DE 155 at 7). Petitioner argues the phrase is indivisible because the two phrases are alternative means of committing one offense. (DE 153 at

---

[7] Section 1716 has been amended since petitioner's convictions. Under the current version, the prohibition on mailing a nonmailable matter with intent to kill or injure another is in subsection (j)(2). 18 U.S.C. § 1716(j)(2). At the time of petitioner's convictions, the relevant text was not part of a specific subsection, but instead was located in the penultimate paragraph of the statute. For purposes of the analysis herein, the relevant statutory language is the same in both versions.

7

8); see also Mathis, 579 U.S. at 506 (discussing distinction between crimes that "list[] multiple elements disjunctively [and crimes] that enumerate[] various factual means of committing a single element"). The court need not address this issue because, for the reasons explained below, even if the court assumes the statute is divisible as respondent suggests, the court still would find the offense does not categorically qualify as a crime of violence. See United States v. Al-Muwwakkil, 983 F.3d 748, 761 & n.9 (4th Cir. 2020) (endorsing this approach where the means versus elements analysis would not affect the outcome).

Thus, assuming without deciding that the modified categorical approach applies, the court must identify the specific crime charged in the indictment. See Mathis, 579 U.S. at 505–06. Petitioner's indictment charged him with two counts of mailing a nonmailable matter "with intent to kill and injure another" and as noted above that is the only predicate crime that can support petitioner's § 924(c) convictions. (DE 120-2; Resp't Suppl. Br. (DE 155) at 9 n.4 (conceding that petitioner's arson convictions are not valid predicates)). As discussed above, after the court identifies the precise crime at issue using the modified categorical approach, the court returns to the categorical approach to determine whether that crime qualifies as a crime of violence under § 924(c)'s force clause. Allred, 942 F.3d at 648.

The court therefore must determine whether mailing a nonmailable matter "with intent to kill or injure another" categorically qualifies as a crime of violence. See id. That inquiry, in turn, turns on "whether the most innocent conduct that the law criminalizes requires proof of the use, attempted use, or threatened use of [physical] force sufficient to satisfy the force clause." Id.; 18 U.S.C. § 924(c)(3)(A); see also Melaku, 41 F.4th at 391. In the related context of the Armed Career Criminal Act, the Supreme Court has defined "physical force" as "violent force," or in other

8

words "force capable of causing physical pain or injury to another person." See Johnson v. United States, 559 U.S. 133, 140 (2010). In addition, the word "use" refers to intentional or knowing conduct, and negligence or even recklessness are insufficient. See Borden v. United States, 141 S. Ct. 1817, 1821–22, 1834 (2021).[8]

In petitioner's direct appeal, the Fourth Circuit described § 1716 as involving three elements: 1) "First the Government must prove that the package in question contained a nonmailable item"; 2) "Second, the defendant must knowingly deposit that package for mailing"; and 3) "Third, the defendant must intend to kill or injure another." United States v. Bullis, No. 96-4354, 1998 WL 171328, at *8 (4th Cir. Apr. 14, 1998).[9] These elements do not necessarily require proof of the use, attempted use, or threatened use of force. See Allred, 942 F.3d at 648. A person may place a nonmailable item in the mails with intent to kill or injure another person without the "use" of force because, due to the sender's mistake or incompetence, the item itself is incapable of causing physical pain or injury. See Johnson, 559 U.S. at 140 (requiring that the use of force be capable of causing physical pain or injury); United States v. Young, 989 F.3d 253, 257–58 (4th Cir. 2021) (describing recent prosecution under 18 U.S.C. § 1716 for mailing an inert explosive device). This same person also did not threaten the use of force because "threatened" in this context refers to a communicated threat of force. See United States v. Taylor, 142 S. Ct. 2015, 2021–24 (2022) (concluding that "threatened use of physical force" requires "a communicated threat" to a "second person"). Accordingly, the most innocent conduct chargeable

---

[8] These definitions also apply to § 924(c)(3)(A)'s force clause. See United States v. Jackson, 32 F.4th 278, 283 (4th Cir. 2022).

[9] The parties have not suggested any alternative formulation of the statute's elements, nor has the court's independent research uncovered same.

9

under § 1716 does not necessarily require either the use or threatened use of force as those terms are defined in § 924(c)(A)'s force clause.

The analysis thus turns on whether mailing a nonmailable matter with intent to kill or injure another constitutes an "attempted use" of physical force. See Allred, 942 F.3d at 648. In Taylor, the Supreme Court provided two examples of conduct that may constitute "attempted" robbery, but that nevertheless failed to establish "attempted use of physical force" under § 924(c)(3)(A). See 142 S. Ct. at 2020–21. In the first, the Court stated that if a "defendant is apprehended before he reaches his robbery victim and thus before he has actually engaged in threatening conduct," the defendant may have taken substantial steps sufficient to sustain a conviction for attempted robbery, but such a conviction "does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." Id.

In the second example, the Court posited the following hypothetical:

> Suppose Adam tells a friend that he is planning to rob a particular store on a particular date. He then sets about researching the business's security measures, layout, and the time of day when its cash registers are at their fullest. He buys a ski mask, plots his escape route, and recruits his brother to drive the getaway car. Finally, he drafts a note—"Your money or your life"—that he plans to pass to the cashier. The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response. When the day finally comes and Adam crosses the threshold into the store, the police immediately arrest him. It turns out Adam's friend tipped them off.

Id. at 2021. While this conduct likely would sustain a conviction for attempted Hobbs Act robbery, the Court explained it would not constitute a crime of violence under the force clause because: "Adam did not use physical force. He did not 'attempt' physical force – his note was a bluff and never delivered. And he never even got to the point of threatening the use of force

10

against anyone or anything." Id. at 2021.

Taken together, these examples suggest that if a defendant places a nonmailable item in the mail, even if in some remote theoretical sense it is capable of injuring another person, that conduct is insufficient to establish § 1716 has an element the attempted use of physical force. Similar to the Taylor examples, law enforcement may know in advance that the defendant placed the bomb in the mail, and could intercept and defuse it before it has any chance of reaching the intended target. See id. at 2020–21. Alternatively, the defendant may be part of a law enforcement sting operation that allowed him to place a small amount of explosiveness in the mail that is incapable of causing physical pain or injury to another, or an inert bomb that is incapable of detonating. See id. Taylor dictates that these scenarios do not establish attempted use of physical force. See id.

Importantly, the foregoing scenarios are not speculative theories about how the government could charge § 1716 offenses. In a recent prosecution under § 1716(j)(2), the defendant was charged with aiding and abetting mailing a nonmailable matter after he solicited an undercover law enforcement officer to mail a bomb to his ex-wife. See Young, 989 F.3d at 257–58. The FBI agent constructed "an inert device that ostensibly matched what [the defendant] asked for [and which] contained a small amount of explosives." Id. at 257. The authorities then delivered the inert bomb to a co-conspirator's house, who packaged it and placed it near a mail receptacle, where the authorities then retrieved it. Id. at 257–58. The defendant was convicted of aiding and abetting the mailing of a nonmailable device with intent to kill, in violation of § 1716(j)(2).[10] Id.

---

[10] The Fourth Circuit has held that aiding and abetting "is not a standalone criminal offense" distinct from the substantive crime of violence. United States v. Ali, 991 F.3d 561, 574 (4th Cir. 2021). Accordingly, the fact that the Young defendant was charged with aiding and abetting liability does not alter the court's analysis herein.

11

at 258.

Young is materially indistinguishable from the two examples in Taylor, both of which were insufficient to establish a crime of violence. See 142 S. Ct. at 2020–21. As in Taylor, the defendant in Young was apprehended by law enforcement well before any attempted use of physical force occurred. Young, 989 F.3d at 257–58. Young also suggests that a defendant can be charged with mailing a nonmailable matter where the item contains such a small amount of explosives or other nonmailable matters, or a device or poison mixture that is constructed so incompetently that it could never detonate or cause harm, that the act of placing it in the mail would not be "capable" of causing physical pain or injury, as required to establish violent force under the force clause. See Johnson, 559 U.S. at 140; Young, 989 F.3d at 257 (noting "small amount of explosives" placed in the bomb constructed by the FBI). Section 1716 therefore does not have as an element the use, attempted use, or threatened use of physical force. See Allred, 942 F.3d at 648 (categorical inquiry rests on "whether the most innocent conduct that the law criminalizes requires proof of the use, attempted use, or threatened use of force sufficient to satisfy the force clause"); Melaku, 41 F.4th at 391 (same).

Respondent fails to address any of the above case law in its supplemental briefing, or even attempt the required categorical analysis of § 1716. Instead, respondent relies on several nonbinding decisions concluding that mailing a nonmailable matter with intent to kill or injure another is a crime of violence under the force clause. (See Resp't Suppl. Br. (DE 155) at 7–8 (relying on United States v. Alexander, No. 2:99-CR-363-APG, 2018 WL 4954066, at *2–3 (D. Nev. Oct. 12, 2018); United States v. Collins, 109 F.3d 1413, 1419 (9th Cir. 1997); and Worman v. Entzel, 953 F.3d 1004, 1006 (7th Cir. 2020)). These cases are not persuasive because they do

12

not address whether § 1716 categorically qualifies as a crime of violence under the standard required by the Supreme Court and the Fourth Circuit. See United States v. Taylor, 979 F.3d 203, 208 (4th Cir. 2020). Moreover, respondent's argument that petitioner procedurally defaulted his claims by failing to raise them on direct appeal also is without merit. See Jackson, 32 F.4th at 283 & n.3.

In sum, the court concludes that mailing a nonmailable matter with intent to kill or injure another does not qualify as a crime of violence under § 924(c)(3)(A). And because respondent concedes that the remaining predicate felonies charged in the indictment – federal arson and attempted arson – are not valid predicate crimes of violence (see DE 155 at 9 n.4), the § 924(c) convictions must be vacated pursuant to § 2255. See Taylor, 979 F.3d at 210.

Having determined that petitioner's convictions must be vacated, the court turns to the issue of the appropriate remedy. Under § 2255, the district court may conduct plenary resentencing, discharge the prisoner, or "correct the sentence" without full resentencing. 28 U.S.C. § 2255(b); see also United States v. Hadden, 475 F.3d 652, 661 (4th Cir. 2007). The remedial provisions of § 2255 "confer[] a broad and flexible power to the district courts to fashion an appropriate remedy [after a sentence is vacated]." United States v. Hillary, 106 F.3d 1170, 1171 (4th Cir. 1997). In this instance, the court agrees with respondent that the sentencing package doctrine supports plenary resentencing. Where a § 2255 petitioner successfully attacks one of the convictions that formed a component of an overall sentencing plan, plenary resentencing allows the "trial court . . . to reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." Greenlaw v. United States, 554 U.S. 237, 253 (2008); see also Dean v. United States, 137 S. Ct. 1170, 1176–78 (2017). And where the

13

court ordered the sentences for the predicate convictions to run concurrently in light of the required consecutive sentences of life plus 360 months' imprisonment for the § 924(c) counts, plenary resentencing allows the court to reconfigure the original plan now that petitioner is no longer subject to the dramatic consecutive sentences for the § 924(c) counts. Plenary resentencing also affords petitioner the opportunity to argue that his post-sentencing rehabilitation, (see DE 136-1 at 54–117, 126), supports a downward variance or concurrent sentences for the remaining counts. See Pepper v. United States, 562 U.S. 476, 480 (2011).[11]

B.   Motion for Compassionate Release

Petitioner also moves for compassionate release from his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now permits a defendant to file motion for compassionate release in the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239.

The court may reduce a defendant's term of imprisonment if it "first [finds] that 'extraordinary and compelling reasons warrant[] [a sentence reduction], then consider[s] the [factors set forth in 18 U.S.C. § 3553(a)], and ultimately determine[s] that the requested reduction [is] consistent with the 'applicable policy statements issued by the Sentencing Commission.'" 18

---

[11]   The court does mean to preview the ultimate sentence in this case. Instead, the foregoing discussion merely summarizes the court's options at resentencing. At resentencing, counsel may present any arguments for a revised sentence within the applicable statutory ranges that comports with 18 U.S.C. § 3553(a).

14

U.S.C. § 3582(c)(1)(A); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021); see also United States v. McCoy, 981 F.3d 271, 275–76 (4th Cir. 2020). The court has "broad discretion" to deny a motion for compassionate release if it determines the § 3553(a) factors do not support a sentence reduction, even if the defendant establishes extraordinary and compelling reasons for release. See Kibble, 992 F.3d at 330–32; McCoy, 981 F.3d at 275; see also United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020).

Here, in light of the court's resolution of the § 2255 motion, petitioner's motion for compassionate release is largely moot. Petitioner relies on the length of his mandatory consecutive sentences for the § 924(c) convictions, but the court has determined above that those convictions will be vacated and the matter set for plenary resentencing without the consecutive terms imposed at the original sentencing. Likewise, petitioner's argument that compassionate release is warranted because his § 924(c) convictions are invalid is now moot in light of the court's vacatur of those same convictions.

Petitioner also argues that his risk of contracting COVID-19 and developing severe illness based on his underlying medical conditions constitute extraordinary and compelling reasons for release. See United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) The medical records submitted, however, indicate that defendant's underlying medical conditions are stable and manageable within the Federal Bureau of Prisons. (Def's Mot. Ex. 4 (DE 136-1) at 17–42). And the availability of a highly effective and safe vaccine that will protect defendant from severe COVID-19 disease undermines his claim that the risk of contracting COVID-19 presents extraordinary and compelling reasons for release. See United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created

15

by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. [For most such prisoners], the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Brown, No. 7:13-CR-44-FL-1, 2021 WL 2481676, at *2 (E.D.N.C. June 17, 2021) (concluding that for most defendants the availability of a highly effective COVID-19 vaccine precludes finding of extraordinary and compelling reasons for release); CDC Recommends the First Updated COVID-19 Booster, CDC, Sept. 1, 2022, https://www.cdc.gov/media/releases/2022/s0901-covid-19-booster.html (approving vaccine booster for Omicron subvariant of COVID-19).

In this unique procedural posture, the court is not inclined to grant compassionate release. Petitioner may argue that his health conditions and risk of contracting COVID-19 justify a downward variance or otherwise mitigated sentence in the context of his forthcoming resentencing. See 18 U.S.C. § 3553(a)(1), (a)(2)(D). Furthermore, plenary resentencing affords the parties a more fulsome opportunity to address the § 3553(a) factors than the current relatively limited briefing submitted in connection with the instant motion for compassionate release. See Kibble, 992 F.3d at 330–32 (requiring analysis of the § 3553(a) factors before granting motion for compassionate release). Finally, petitioner may request expedited resentencing or file renewed motion for compassionate release in the event of material changes in his health conditions.

## CONCLUSION

Based on the foregoing, petitioner's motion to vacate (DE 98) is GRANTED, and his § 924(c) convictions in counts three and six are VACATED. Petitioner's sentence is VACATED in its entirety and the court orders plenary resentencing. United States Probation is DIRECTED

to investigate, prepare, file under seal, and publish to the appropriate parties a modification to the presentence investigation report, including recalculation of petitioner's Guidelines sentencing range for the remaining convictions, based on current law and the terms of this order, within **30 days**. Objections to the report (if any) shall be filed on the docket within **14 days** of service of the modification. The clerk is DIRECTED to schedule resentencing during the next available term of court following the due date for objections to the presentence investigation report. Any sentencing memoranda, motions for departure or variance, and any statements, letters, affidavits, or other written communication concerning character of the defendant shall be filed no later than **seven days** before the resentencing hearing.

Respondent's motion to dismiss the § 2255 claims (DE 128) is DENIED, and petitioner's motion for compassionate release (DE 136) is DENIED without prejudice. The clerk is DIRECTED to enter judgment closing the § 2255 proceedings.

SO ORDERED, this the 16th day of September, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge