IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:95-CR-142-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| STEPHAN M. BULLIS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the court for resentencing hearing on February 24, 2023, following defendant's successful motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The court memorializes herein reasons for granting the government's motion for upward departure from the guidelines range pursuant to U.S.S.G. §§ 5K2.3, 5K2.6, 5K2.8, and U.S.S.G. § 2A2.1 cmt. n.3 (1995). The court also reiterates its grant of the government's motion for upward variance, albeit not to the full extent requested, for reasons stated herein and additionally at hearing.

**BACKGROUND**

In July 1995, defendant mailed two pipe bombs, the first to his former wife ("Ms. Bullis") at her place of employment, Business Telecom, Inc. ("BTI"), and the second to another employee of BTI. The first bomb was delivered to Ms. Bullis. The bomb exploded as she opened the package, severing most of her left hand and causing other injuries. The explosion also caused extensive property damage to BTI's office, and emotionally traumatized numerous coworkers, including those who rendered aid in the immediate aftermath of the bombing. Postal employees discovered the second bomb in a parcel bin located in a public shopping mall and law enforcement successfully defused it. Defendant attempted to kill his wife because he was involved in an

extramarital affair and to collect life insurance proceeds.

On August 15, 1995, a federal grand jury returned indictment charging defendant with the following: 1) mailing a non-mailable item (a pipe bomb) with intent to kill or injure another, in violation of 18 U.S.C. § 1716 (count one); 2) maliciously damaging property by means of explosive materials (arson), with personal injury resulting, in violation of 18 U.S.C. § 844(i) (count two); 3) using a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (count three); 4) mailing a non-mailable item (a pipe bomb) with intent to kill or injure another, in violation of 18 U.S.C. § 1716 (count four); 5) attempting to maliciously damage property by means of explosive materials (attempted arson), in violation of 18 U.S.C. § 844(i) (count five); and 6) using a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (count six). Defendant pleaded not guilty to the foregoing offenses and proceeded to jury trial.[1] On February 14, 1996, the jury returned guilty verdicts as to all counts.

On April 22, 1996, defendant was sentenced as follows: 1) 235 months' imprisonment on counts one, two, four, and five, all to be served concurrently; 2) 360 months' imprisonment on count three, to be served consecutively to the terms in counts one, two, four, and five; and 3) life imprisonment on count six, to be served consecutively to all other counts. The aggregate sentence therefore was life imprisonment and a consecutive additional term of 595 months' imprisonment. Defendant appealed, and the United States Court of Appeals for the Fourth Circuit affirmed the judgment of conviction

In June 2016, defendant moved to vacate, set aside, or correct his sentence pursuant to 28

---

[1] Former United States District Judge James C. Fox presided over the original trial and sentencing. This matter was reassigned to the undersigned upon retirement of Judge Fox.

U.S.C. § 2255, arguing that his convictions and sentence in counts three and six (the § 924(c) convictions) should be vacated. Defendant asserted that the predicate convictions supporting his § 924(c) convictions no longer qualified as crimes of violence pursuant to Johnson v. United States, 576 U.S. 591 (2015) and related case law. The court granted the motion in September 2022, thereby vacating the convictions in counts three and six. The court ordered full resentencing for the remaining convictions, counts one, two four, and five.

Following vacatur of counts three and six, defendant's guidelines range under the 1995 version of the guidelines manual is 188 to 235 months' imprisonment. Although the parties did not object to the guidelines range, the government moved for an upward departure of six levels, which would produce a total offense level of 42. With criminal history category I and total offense level 42, the guidelines range is 360 months to life imprisonment. Within this range, the government requested a sentence of 635 months' imprisonment. In the alternative, the government moved for upward variance to this same sentence. As more fully set forth below, defendant did not oppose upward departure pursuant to two of the guidelines provisions offered by the government, but he opposed further departure on the remaining grounds and also argued that six-level increase was not warranted under the facts and governing law. Defendant ultimately requested a sentence of no more than 360 months' imprisonment.

The court held resentencing on February 24, 2023. At hearing, the court granted the government's motions for upward departure and, in the alternative, for upward variance, albeit not to the full extent requested. The court determined that a sentence of 450 months' imprisonment would serve the goals of sentencing in 18 U.S.C. § 3553(a).

A. Motion for Upward Departure

18 U.S.C. § 3553(b)(1) provides that the court may impose an upward departure from the

3

guidelines range if the court finds "that there exists an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." See also United States v. Grubbs, 585 F.3d 793, 804 (4th Cir. 2009). With respect to factors already taken into account by the guidelines, upward departure is warranted "if the court determines that, in light of unusual circumstances, the guidelines level attached to that factor is inadequate." U.S.S.G. § 5K2.0 p.s. (1995).[2] As discussed below and at hearing, the court granted the motion for upward departure pursuant to the following guidelines provisions[3]:

    1.        U.S.S.G. § 5K2.3 – Extreme Nature of Psychological Injuries

Section 5K2.3 provides that "if a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range." Such injury "would be sufficiently severe to warrant application" of an upward departure "when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns." U.S.S.G. § 5K2.3. Departure pursuant to § 5K2.3 is appropriate when the government presents victim testimony establishing severe psychological symptoms that are longstanding or continuous. See United States v. Alvarado Perez, 609 F.3d 609, 615 (4th Cir. 2010) (upholding departure under § 5K2.3 where defendant brought firearm to meeting with probation officer, which caused her substantial trauma and resulted in the victim wearing a bullet-proof vest and requesting transfer from her 25-year career

---

[2] The parties relied on the 1995 version of the Guidelines manual at hearing, and the court follows that convention herein. With minor exceptions not relevant here, the relevant departure provisions were the same in 1995 and under the current manual.

[3] Although the government's written motion also requested upward departure under U.S.S.G. § 5K2.2, the government withdrew reliance on § 5K2.2 at hearing.

4

as a probation officer); see also United States v. Crowe, No. 95-5969, 1997 WL 49553, at *5 (4th Cir. Feb. 7, 1997) (defendant attacked victim with knife and sent numerous letters threatening to kill her, causing the victim frequent nightmares, fear of going to work, fear of knives, and loss of enjoyment in her profession, and where medical professionals believed these symptoms would persist for the remainder of her life).

Here, the government relies primarily on the psychological injuries to the former Ms. Bullis, the primary victim. At the original sentencing hearing, Ms. Bullis stated that

> there is not one waking moment that I don't think about what has happened. Every time I move my hands I think about it. Every time I have to look in the mirror and see the scars, I think about it again. And when my children ask me why would daddy do this, I can't answer them. We have all lost our peace of mind. I don't think that I can ever get that back.

(Sent'g Tr. (DE 96) at 6).

In addition, the government offered testimony establishing that other BTI employees suffered longstanding emotional injuries. The co-worker who witnessed the explosion, Judith Harrison, stated that the bombing caused her difficulty sleeping, difficulty going out in public, and diminished control over her anxiety. Harrison described the resulting emotional trauma as "tremendous." (Sent'g Tr. (DE 96) at 4–5). At the resentencing hearing, Phillip Herndon, a BTI employee who rendered assistance to Ms. Bullis in the aftermath of the bombing, testified that he occasionally thinks about the event. Further, Anthony Copeland, a BTI executive at the time, testified that many employees present during the bombing were unable to return to work due to the psychological trauma caused by defendant's actions.

Based on the testimony set forth above, the court found the government established sufficiently severe psychological injury of extended duration warranting an upward departure under § 5K2.3. See Alvarado Perez, 609 F.3d at 615 (affirming two-level departure on the basis

of similar evidence from the primary victim). Notably, defendant conceded that upward departure under this provision is appropriate on the basis of the psychological injuries to Ms. Bullis and Harrison.

Defendant, however, requested that the court impose at most a one-level departure pursuant to § 5K2.3 because the psychological impact in part was accounted for by guidelines used to set the total offense level. In particular, defendant argued the attempted murder guideline provision, U.S.S.G. § 2A2.1, which established the base offense level, and the four-level enhancement for permanent physical injury under § 2A2.1(b)(1)(A), both accounted for some level of psychological trauma. But defendant provided no legal authority for his position that psychological trauma is accounted for in the base offense level under § 2A2.1. And the four-level enhancement under § 2A2.1(b)(1)(A) is for permanent or life-threatening "bodily" injury as opposed to psychological injury. See U.S.S.G. § 2A2.1(b)(1)(A).

Even if psychological trauma is accounted for under these provisions, the extent of such trauma to Ms. Bullis and her coworkers removes this case from the heartland of cases covered by the attempted murder guideline. See Koon v. United States, 518 U.S. 81, 93 (1996). As the government explained, defendant attempted murder by sending a homemade pipe bomb to an occupied office building, causing extensive, widespread, and enduring psychological trauma to many victims other than Ms. Bullis. The court also found that the extent of psychological trauma to Ms. Bullis and Harrison, as reflected in their statements at the original sentencing, was so severe, and of such an extended and continuous duration, that a one-level departure was inadequate under the facts of this case. Based on this evidence and for the additional reasons discussed at hearing, the court found that the extent of psychological trauma was not adequately accounted for in the guidelines, warranting a two-level upward departure. See U.S.S.G. §§ 5K2.0 p.s. (1995), 5K2.3;

6

Grubbs, 585 F.3d at 804.

        2.        U.S.S.G. § 5K2.6 – Weapons and Dangerous Instrumentalities

Section 5K2.6 provides that:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

U.S.S.G. § 5K2.6.

Here, the court found the homemade pipe bombs in this case, and the manner in which they were used, were substantially more dangerous than the standard weapons used to commit arson or in mailing a nonmailable matter with intent to kill. See United States v. Murray, 65 F.3d 1161, 1171–72 (4th Cir. 1995) (affirming six-level increase under U.S.S.G. § 5K2.6 where the sawed-off shotgun was not accounted for in the guidelines enhancement for possession of firearm during the offense)  The pipe bombs were disguised as postal packages and placed in the United States mail, which endangered numerous postal workers and BTI employees.  Furthermore, the first pipe bomb detonated, endangering dozens of BTI employees, which is a more widespread risk of loss of life than typically accounted for in the guideline provision attempted murder.  See 18 U.S.C. § 3553(b)(1) (requiring aggravating circumstance not adequately taken into consideration by the guideline); U.S.S.G. § 2A2.1 (guideline provision for attempted murder).

At hearing, defendant did not dispute that an upward departure pursuant to § 5K2.6 is appropriate, but he argued any such departure should be "very limited" because the arson guideline accounts for the use of an explosive device, and defendant's offense level of 32 under § 2A2.1[4] is

---

[4]     Defendant arrives at offense level of 32 by starting with the base offense level of 28 under § 2A2.1 and

7

eight levels above the pertinent arson provision. (See PSR (DE 100) ¶¶ 53–54 (providing offense level 32 under § 2A2.1 as explained in note 4, supra); compare U.S.S.G. § 2K1.4 (stating the base offense level for arson conviction is 24 if the offense created a substantial risk of death or serious bodily injury). Defendant relies on United States v. Elliot, in which the Fourth Circuit reversed upward departure under § 5K2.6 where the defendant's use of a Molotov cocktail to set fire to various properties he owned was accounted for in the arson guideline. 797 F. App'x 750, 753–54 (4th Cir. 2019). The Fourth Circuit explained that the "inherent dangerousness" of Molotov cocktails cannot serve as an aggravating circumstance warranting upward departure under § 5K2.6 where the arson conviction itself "contemplates the use of Molotov cocktails." Id. at 754.

Unlike Elliot, the court is not relying solely on the inherent dangerousness of the homemade pipe bombs to establish an upward departure. As set forth above, departure is warranted under § 5K2.6 in this case based on the manner in which the pipe bombs were mailed to BTI and the extent to which the weapons endangered others, including employees of BTI, anyone in the postal service that handled either of the bombs, and members of the public exposed to the second bomb that was left in a mailing bin in a public shopping mall. These factors are not accounted for in the arson or attempted murder guidelines. See U.S.S.G. §§ 2K1.4, 2A2.1; see also Murray, 65 F.3d at 1171–72. Elliot also is distinguishable because in that case the district court did not make these findings of aggravating circumstances. See 797 F. App'x at 753–754.

At hearing, defendant also noted the arson guideline provides for a base offense level of 24 if the offense "created a substantial risk of death or serious bodily injury to any person" or that

---

adding four additional levels for the permanent injury enhancement. (See PSR (DE 100) ¶¶ 53–54). For purposes of this argument, defendant did not include the additional levels for perjury and multiple counts because they are unrelated to the use of a dangerous weapon.

8

"involved destruction or attempted destruction of a dwelling, an airport, an aircraft, a mass transportation facility, a mass transportation vehicle, a maritime facility, a vessel, . . . a public transportation system, a state or government facility, an infrastructure facility, or a place of public use." U.S.S.G. § 2K1.4(a)(1) (emphasis added). Defendant argued that he is already eight levels above the offense level that accounts for using an explosive device to commit arson that creates a substantial risk of death or serious bodily injury or that destroys largescale infrastructure.

The arson guideline, however, permits a cross reference to the attempted murder guideline where "the [arson] offense was intended to cause death or serious bodily injury" and "the resulting offense level is greater than that determined [under § 2K1.4(a)]." U.S.S.G. § 2K1.4(c). The guideline therefore expressly acknowledges that some acts constituting arson should be punished more severely than base offense level 24, where the facts show intent to cause death or serious bodily injury. See id. And for the reasons explained above, the attempted murder guideline used in this case, even though it produces a base offense level that is higher than the arson guideline, remains insufficient to account for the use of a deadly weapon specifically manufactured and deployed by defendant to cause widespread destruction and loss of life. See Murray, 65 F.3d at 1171–72; 18 U.S.C. § 3553(b)(1).

Defendant also relied on United States v. Barber, which held that the use of a weapon during a murder offense "is taken into account in the heartland of the second-degree murder guideline" and thus the use of a dangerous weapon cannot standing alone justify upward departure under § 5K2.6. 119 F.3d 276, 285 (4th Cir. 1997). The court of appeals also held, however, that this circumstance "does not end the inquiry" because upward departure may be warranted "if the district court determines that the [use of a dangerous weapon] is present to an extraordinary degree." Id. Here, for all the reasons previously explained, defendant's use of a dangerous

9

weapon was present to an extraordinary degree.

Finally, defendant argued that the four-level enhancement for inflicting permanent bodily injury on Ms. Bullis also accounts for the use of a dangerous weapon. See U.S.S.G. § 2A2.1(b)(1)(A). As discussed above in connection with the arson guideline, this provision does not address the widespread risk of death or serious bodily injury to numerous BTI employees, postal employees, or members of the public caused by defendant's conduct. See id. Importantly, the commentary to § 2A2.1 allows for upward departure, in addition to the four-level enhancement for permanent or life-threatening bodily injury, "if the offense created a substantial risk of death or serious bodily injury to more than one person." See U.S.S.G. § 2A2.1 cmt. n.3 (1995).[5] The Sentencing Commission's inclusion of this application note suggests that the enhancement for permanent or life-threatening injury does not account for defendant's conduct. See Grubbs, 585 F.3d at 804.

In sum, the court concluded that upward departure was appropriate under § 5K2.6 based on the manner defendant deployed the pipe bombs and the extent to which they endangered others, and where these factors were not adequately taken into account by the guidelines for arson or attempted murder. The court departed upward by two levels to account for defendant's use of a dangerous weapon.

3. U.S.S.G. § 5K2.8 – Unusually Heinous, Cruel, Brutal, or Degrading Conduct

Section 5K2.8 provides that "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct." U.S.S.G. § 5K2.8. "Examples of extreme conduct include

---

[5] The court separately addresses this departure provision below.

torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." Id.

The court also granted the motion for upward departure under U.S.S.G. § 5K2.8. As set forth above, defendant mailed two pipe bombs to an office building intending to kill his wife and others, causing longstanding and severe physical and psychological injuries. The bombs also were designed specifically to cause extensive and devastating injuries to Ms. Bullis and others. The court easily concluded that defendant's conduct inflicted gratuitous injury, warranting a two-level upward departure. See United States v. Myers, 66 F.3d 1364, 1374 (4th Cir. 1995); United States v. Bailey, 112 F.3d 758, 773 (4th Cir. 1997).

The court observes that the factors supporting this enhancement also were considered, to some extent, in connection with upward departure on the basis § 5K2.6, the use of a dangerous weapon enhancement. And of course Ms. Bullis and the other victims' physical and psychological injuries were considered in the upward departure under § 5K2.3 and the enhancement to the base offense level under U.S.S.G. § 2A2.1(b)(1)(A). The upward departures/enhancements imposed under these provisions, however, do not sufficiently account for defendant's heinous, cruel, and brutal conduct in mailing the pipe bombs to Ms. Bullis at an occupied office building. See U.S.S.G. §§ 5K2.0 p.s. (1995). In addition, § 5K2.8 focuses on the defendant's conduct relative to the victims, and not the specific severity of the injuries inflicted, or the dangerousness of the weapon used. See United States v. Lewis, 89 F. App'x 842, 844 (4th Cir. 2004).

Defendant argued that upward departure under this provision requires conduct that is more prolonged and extensive than mailing two pipe bombs, such as repeated sexual or physical assaults, driving for extended period with the victim in the trunk of the car, or leading officers on an extensive high-speed chase. Importantly, the plain text of the guideline does not require

11

prolonged assaults, confinement of the victim, extensive torture, or other ongoing conduct to support the departure. See U.S.S.G. § 5K2.8; United States v. Ashford, 718 F.3d 377, 382 (4th Cir. 2013) (stating the Guidelines are interpreted based on the ordinary rules of statutory interpretation, which begin with examining the plain text of the provision). While it is true that § 5K2.8 provides that "prolonging of pain or humiliation" may constitute extreme conduct, that one example does not require that the court find prolonged conduct in all cases in order to upwardly depart. Indeed, the provision may apply to conduct that is limited in duration, but where the defendant's conduct nevertheless constitutes torture or gratuitous infliction of injury. See U.S.S.G. § 5K2.8; see also United States v. Gill, 228 F. App'x 282, 286–87 (4th Cir. 2007) (affirming upward departure under § 5K2.8 where during the course of a robbery defendant walked up to the store clerk and shot him in the head without warning); United States v. Terrell, 11 F. App'x 168, 169–70 (4th Cir. 2001) (holding § 5K2.8 departure was appropriate where defendant sent two threatening and sexually explicit letters).

Moreover, while the court of appeals has affirmed application of § 5K2.8 on the basis of ongoing or prolonged conduct, that was a function of the specific facts before the court in those cases. See Myers, 66 F.3d at 1374; Bailey, 112 F.3d at 773; United States v. Bonetti, 277 F.3d 441, 449–51 (4th Cir. 200). Defendant has not identified, and the court has not found, any binding precedent or other case law suggesting a finding of ongoing or prolonged conduct is required for upward departure under § 5K2.8.[6] Accordingly, defendant's argument that § 5K2.8 does not

---

6     The Bonetti case does refer to § 5K2.8 as the "duration factor," but that is in reference to the defendant's conduct of harboring an unlawful alien in "slavery-like" conditions for 15 years. See 277 F.3d at 445–46, 450. The court of appeals did not suggest that ongoing or prolonged conduct is required to upwardly depart under § 5K2.8. See id. at 449–51.

apply to his conduct is without merit.

4.  U.S.S.G. § 2A2.1 cmt. n.3 (1995)[7]

As noted above, defendant's guidelines range was based in part on U.S.S.G. § 2A2.1, the guideline for attempted murder. Application note three to § 2A2.1 provides that "if the offense created a substantial risk of death or serious bodily injury to more than one person, an upward departure may be warranted." U.S.S.G. § 2A2.1 cmt. n.3 (1995). Here, defendant does not dispute that his conduct meets this standard and therefore upward departure pursuant to this application note also is appropriate.

Defendant argued that any departure under this provision also should be limited because he received a two-level enhancement under the guidelines' "grouping" rules for multiple counts. (PSR (DE 100) ¶¶ 65–71); see also U.S.S.G. § 3D1.4. This argument is unpersuasive, however, where the fact that defendant received enhancement for multiple counts of conviction is unrelated to the (undisputed) fact he created a substantial risk of death or serious bodily injury. And to the extent defendant argued that § 2A2.1 already incorporates substantial risk of death or serious bodily injury to more than one person, that position is refuted by application note three itself, which specifically provides an upward departure may be appropriate in that circumstance. See U.S.S.G. § 2A2.1 cmt. n.3 (1995).

It is true, as defendant argued, that Ms. Bullis is the only victim who suffered serious bodily injury, and the court took that factor into account in determining the extent of the departure under the application note. The provision, however, allows for upward departure based on "substantial risk of death or serious bodily injury to more than one person" and defendant's conduct presented

---

[7] In the current version of the guidelines, this provision is application note two to U.S.S.G. § 2A2.1. The substantive provision is the same in both versions.

such a risk in the extreme. See id. Accordingly, the court departed upwardly two levels under application note three to § 2A2.1

As requested by the government, the court ultimately concluded that a six-level upward departure, to offense level 42, was appropriate in this case. Although each of the upward departure provisions discussed above independently justify a two-level upward adjustment, for a total of eight levels, the court did not depart upwardly over the level requested by the government and for which defendant received notice. The court therefore imposed the two-level upward departure under U.S.S.G. § 2A2.1 cmt. n.3 (1995) as an alternative finding in the event the court's determination as to any of the remaining provisions is deemed erroneous by the court of appeals. As noted above, with criminal history category I, offense level 42 produces a guidelines range of 360 months to life imprisonment. U.S.S.G. ch. 5 pt. A (1995).

B.  18 U.S.C. § 3553(a) Factors/Motion for Upward Variance

Having calculated the advisory guidelines range, the court turned its attention to determining a sentence that is "sufficient, but not greater than necessary" to achieve the goals of 18 U.S.C. § 3553(a). Kimbrough v. United States, 552 U.S. 85, 111 (2007) (quoting § 3553(a)); United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010). The court "must determine whether a sentence within that [guidelines] range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence that does serve those factors." United States v. Green, 436 F.3d 449, 456 (4th Cir. 2006).

In determining the particular sentence to be imposed under this standard, the court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]
. . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a). In addition, the court must consider "the sentences legally available; [] the Sentencing Guidelines; [] Sentencing Commission policy statements; . . .and the need for restitution." United States v. Fowler, 948 F.3d 663, 668 (4th Cir. 2020).

Here, the court determined that a sentence of 450 months' imprisonment is sufficient, but not greater that necessary, to serve the § 3553(a) factors.[8] For the reasons stated at sentencing, that sentence accounts for defendant's unique history and characteristics, including the attempted murder of his former wife and the mother of his only daughter, the substantial risk of death and serious bodily to numerous people associated with mailing two pipe bombs, and defendant's post-sentencing rehabilitation. Moreover, 450 months is necessary to reflect the gravity of the offense conduct, promote respect for the law, provide just punishment, protect the public, and serve the goals of general and specific deterrence. Finally, as stated at hearing, the court granted the government's alternative motion for upward departure, finding that even if it miscalculated the guidelines range or erroneously granted the motion for upward departure, it would have imposed this same sentence as an upward variance. See United States v. Hargrove, 701 F.3d 156, 162–63 (4th Cir. 2012).

---

[8] In doing so, the court declined the government's request for a sentence of 635 months, and defendant's request for 360 months.

15

## CONCLUSION

In sum, for the reasons stated herein and orally at sentencing, the court granted the government's motion for upward departure (DE 166) pursuant to U.S.S.G. §§ 5K2.3, 5K2.6, 5K2.8, and application note three to U.S.S.G. § 2A2.1 (1995). The court departed upwardly six levels to offense level 42, which at criminal history category I produced a guidelines range of 360 months to life imprisonment. The court further concluded that a guidelines sentence of 450 months' imprisonment and five years' supervised release is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a). In the alternative, and in the event the court erred in calculating the guidelines range or granting the motion for upward departure, the court imposed the same sentence as an upward variance.

This the 2nd day of March, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge